## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

**FINANCIAL INFORMATION**
**TECHNOLOGIES, LLC,**

     **Plaintiff,**

**v.**                               **CASE NO. 8:17-cv-00190-SDM-SPF**

**ICONTROL SYSTEMS, USA, LLC,**

     **Defendant.**

_____/

### PLAINTIFF'S RESPONSE TO ICONTROL'S MOTION FOR STAY
### OF EXECUTION PENDING DISPOSITION OF POST-TRIAL MOTIONS

**I.**

### PRELIMINARY STATEMENT

iControl has moved under Federal Rule of Civil Procedure 62(b) to stay execution of the judgment pending resolution of its post-trial motions and to waive the Rule's requirement that iControl post a supersedeas bond. [Doc. 260]. In support of that requested relief, iControl has filed the affidavit of its President and Chief Executive Officer, Tal J. Zlotnitsky ("Zlotnitsky"). [Doc. 260-1].  Zlotnitsky asserts that, because of current economic conditions, iControl cannot "rais[e] the capital needed to post a bond." [Doc. 260-1, ¶ 9].  However, the affidavit does not disclose the amount of capital that would be required for the bond, nor does it disclose iControl's current cash reserves or other assets.  The affidavit is silent as to the role of iControl's insurance coverage, which is referenced in iControl's counsel's billing narratives. [Doc. 255-2 at 2, 3, 7, 8, 11, 13, 15, 20, 21, 32, 39, 44].

## II

## <u>ARGUMENT</u>

### A.    <u>iControl's Burden Under Rule 62(b)</u>

Rule 62(b) of the Federal Rule of Civil Procedure provides:

(b) **Stay by Bond or Other Security**. At any time after judgment is entered, a party may obtain a stay by providing a bond or other security. The stay takes effect when the court approves the bond or other security and remains in effect for the time specified in the bond or other security.[1]

The purpose of requiring a bond is to assure that, if an appeal or posttrial motions are unsuccessful, there will be adequate funds available to pay the judgment. *Aerospace Mktg., Inc. v. Ballistic Recovery Sys., Inc.*, 2005 WL 2057404, at *1 (M.D. Fla. Aug. 23, 2005); 12 *Moore's Federal Practice* - Civil § 62.03 (2020). A bond also secures the prevailing party "against any loss sustained as a result of being forced to forgo execution on a judgment" during this period of delay. *Poplar Grove Planting & Ref. Co., Inc. v. Bache Halsey Stuart, Inc.*, 600 F.2d 1189, 1191 (5th Cir. 1979). This "'is an important safeguard.'" *Avirgan v. Hull*, 125 F.R.D. 185, 188 (S.D. Fla. 1989) (*quoting Olympia Equipment Leasing Co. v. Western Union Telegraph Co.,* 786 F.2d 794, 800 (11th Cir. 1986)(Easterbrook, J., concurring)).

There is "very little authority for entering such a stay without some security being posted." *Slip N' Slide Records, Inc. v. TVT Records, LLC*, 2007 WL 1098751, at *2 (S.D. Fla. Apr. 8, 2007).   "[D]efendants normally must post a full security

---

[1] The subsections of Rule 62 were revised and reorganized in December 2018.  The applicable provisions in current Rule 62(b) are carried forward from the former Rule 62(d). Fed. R. Civ. P. 62 advisory committee's note to 2018 amendment. "There is no change in meaning." Fed. R. Civ. P. 62 advisory committee's note to 2018 amendment.   Accordingly, this Response also cites to case law analyzing former Rule 62(d) when discussing Rule 62(b).

supersedeas bond . . . and 'the courts should only allow lesser bonds *on extraordinary occasions*.'" *FTC v. HES Merch. Servs. Co.*, 2017 U.S. Dist. LEXIS 43203, at *4-5 (M.D. Fla. Jan. 31, 2017) (emphasis added) (*quoting Nelson v. Freightliner LLC*, 2004 U.S. Dist. LEXIS 30941, at *3 (M.D. Fla. June 25, 2004)).

"Courts generally find that the posting of a bond is inappropriate in only two circumstances: (1) where the defendant's ability to pay the judgment is 'so plain that the cost of the bond would be a waste of money'; and (2) where the bond requirement would put the defendant's other creditors in undue jeopardy." *FTC v. HES Merch. Servs. Co.*, supra at *5 (*quoting Nelson*, 2004 U.S. Dist. LEXIS 30941, at *3).

As the former Fifth Circuit stated:

> If a court chooses to depart from the usual requirement of a full security supersedeas bond to suspend the operation of an unconditional money judgment, it should place the burden on the moving party to objectively demonstrate the reasons for such a departure. It is not the burden of the judgment creditor to initiate contrary proof. Such a supersedeas bond is a privilege extended the judgment debtor as a price of interdicting the validity of an order to pay money.

*Poplar Grove Planting & Ref. Co., Inc. v. Bache Halsey Stuart, Inc.*, 600 F.2d 1189, 1191 (5th Cir. 1979). "The defendant must especially show that, in the absence of standard security, plaintiff will be properly secured against the risk that the defendant will be less able to satisfy the judgment subsequent to disposition of the post-trial motions." *Slip N' Slide Records, Inc. v. TVT Records, LLC*, 2007 WL 1098751, at *2 (S.D. Fla. Apr. 8, 2007).

**B.     iControl Has Not Demonstrated It Currently Lacks The
Resources To Post A Bond**

iControl contends it should not be required to post a bond because doing so could render it insolvent.  However, the overwhelming weight of authority supports the conclusion that such circumstances make the posting of a bond even more important. As one Court reasoned:

> **If . . . the defendant's financial situation appears precarious, that fact counsels not in favor an unsecured stay but, instead, in favor of a stay only upon the posting of adequate security. . . . [I]f a Court finds that the defendant's ability to satisfy its obligations, now or in the future, is uncertain then it is not appropriate to stay execution of a judgment . . . .**

 *Slip N' Slide Records, Inc. v. TVT Records, LLC*, 2007 WL 1098751, at *2 (S.D. Fla. Apr. 8, 2007)(emphasis supplied) (*citing Aerospace Marketing, Inc. v. Ballistic Recovery Sys., Inc.,* 2005 WL 2057404 (M.D.Fla. Aug. 23, 2005); *see also Avirgan v. Hull*, 125 F.R.D. 185, 188 (S.D. Fla. 1989) ("[i]t is important  to note that, with the [judgment debtor]'s admitted financial difficulty, this case appears to be just the type for which the supersedeas is designed—"the financial distress of the debtor puts the judgment creditor in peril if it waits for the appeal to take its course"); *S.E.C. v. Black*, 2012 WL 5429908, at *2 (N.D. Ill. Nov. 6, 2012) ("[p]ossible inability to satisfy a judgment is good reason to deny a stay or require a bond"); *Lewis v. United Joint Venture*, 2009 WL 1654600, at *1 (W.D. Mich. June 10, 2009) ("UJV's purported inability to post a bond does not in any conceivable way show that Plaintiff's interest in the full value of the judgment is secure. In fact, it shows just the opposite. UJV's alleged illiquidity strengthens, not weakens, the need for an appropriate bond.").

iControl asserts that courts have discretion to waive the bond requirement "where defendants who face extremely large money judgments are unable to secure a supersedeas bond." [Doc. 260 at 2]. iControl cites two cases in support of this proposition: *Poplar Grove*, 600 F.2d at 119, and *Columbia Cas. Co. v. Ker, Inc.*, 2009 WL 10673292, at *2 (M.D. Fla. Sept. 23, 2009). In both cases, the proposition was mere *dicta* because there was no suggestion from the parties that the defendant lacked the ability to post the bond. *See Poplar Grove*, *supra,* at 119[2];*Columbia*, 2009 WL 10673292, at *2.[3] These cases, in turn, both derived the proposition from two other authorities: *C. Albert Sauter Co., Inc. v. Richard S. Sauter Co., Inc.*, 368 F. Supp. 501, 520 (E.D. Pa. 1973); and *Trans World Airlines, Inc. v. Hughes*, 314 F. Supp. 94 (S.D.N.Y. 1970). Neither of these cases are analogous to the instant case.

In *Trans World Airlines, Inc. v. Hughes*, the court excused an antitrust defendant from posting a full bond to stay execution of a $145,448,141.07 judgment where the defendant's net worth was about $500,000,000, and obtaining a bond was "not practicable under the circumstances" because the defendant's assets were largely illiquid. *Id.* at 98. However, there was no doubt that the defendant would be able to satisfy the judgment when the stay was lifted. In *C. Albert Sauter Co.*, the court waived the bond requirement on a $1.2 million judgment where it was undisputed that the antitrust defendant lacked the financial ability to obtain a bond "[o]n the basis of uncontradicted financial statements filed in th[e] action." 368 F. Supp. at 520.

---

[2] (quoting lower court's order, which stated that "it is ridiculous to even suggest that the defendant could not respond to the judgment if and when it becomes final").

[3] ("[Defendant]'s position is *not* one of a defendant unable to secure a bond because of an extremely large judgment." (emphasis added)).

The reference to financial statements in *C. Albert Sauter Co.* demonstrates that a defendant cannot obtain relief from the requirements of Rule 62(b) without making a specific and detailed showing of its inability to post a full bond.  In *C. Albert Sauter Co.,* the defendant produced comprehensive financial records, which enabled the court to fashion a detailed order providing substantial alternative security in the form of a lesser bond of $100,000 and the placement in escrow of: (1) all of the defendant's outstanding stock; (2) its stock in a variety of other companies; (3) all dividends and interest thereon; and (4) about $100,000 in cash.

In *Trans World Airlines*, the court ordered the defendant to "conduct negotiations with lending institutions" and to inform the court as to precisely how much it could obtain by way of a bond.  The defendant conducted the required negotiations but merely represented to the court that they were unsuccessful, rather than providing "definitive answers" about what the terms of any bond arrangements would be.  *Id*. at 97. The court rejected this proffer.  The plaintiff argued and the court agreed that, to the extent the defendant sought to provide an alternative form of security, the plaintiff should "receive the same treatment as would be afforded any lending institution approached for a loan by the [defendant]," including "detailed financial statements, regular certificates by responsible officers or defendants as to the maintenance of net worth[,] and limitations on transactions between [the defendant] and its 100% Stockholder." *Id*. at 96, 97. The court ordered the defendant "to furnish the plaintiff with the audited financial statements of its operations for the year 1969 and a list of its assets worth $10,000,000 or more," "for the purpose of giving the plaintiff an

6

opportunity to know what was being offered and to be in a position to evaluate whether it would be sufficient to secure its judgment." *Id.* at 98. After the court examined the defendant's documentation, it ordered the defendant to post a bond of $75,000,000. *Id.* The balance on the judgment, $86,447,686.59, would be secured based on the defendant's general financial strength, and the court ordered the defendant to provide to the plaintiff quarterly, independent audits confirming, on a continuous basis, that the defendant's net worth exceeded three times the amount of the judgment.

As these cases demonstrate, "[i]t is the appellant's burden to demonstrate objectively that posting a full bond is impossible or impractical; likewise, it is the appellant's duty to propose a plan that will provide adequate (or as adequate as possible) security for the appellee." *Grand Entm't Grp. v. Star Media Sales*, 1992 U.S. Dist. LEXIS 7164, at *4-5 (E.D. Pa. May 14, 1992) (*quoting U. S. on Behalf of Small Bus. Admin. v. Kurtz*, 528 F. Supp. 1113, 1115 (E.D. Pa. 1981)).

iControl falls far short of meeting this burden. It offers only the conclusory, two-page affidavit of Tal J. Zlotnitsky.  It asserts that iControl cannot "rais[e] the capital needed to post a bond," but does not disclose the amount of capital that would be required, nor does it disclose iControl's current cash reserves or other assets.  The affidavit is also silent as to the role of iControl's insurance coverage, which is referenced in iControl's counsel's billing narratives. [Doc. 255-2 at 2, 3, 7, 8, 11, 13, 15, 20, 21, 32, 39, 44].

Former Seventh Circuit Judge Richard Posner observed that bonding agencies typically require payments of only one percent of the judgment per year. *See Lightfoot*

*v. Walker*, 797 F.2d 505, 507 (7th Cir. 1986) (on that basis, denying motion to stay execution); *see also EEOC v. Preferred Mgmt. Corp.*, 2002 U.S. Dist. LEXIS 18145, at *13 (S.D. Ind. Sep. 24, 2002) (same) (quoting *Lightfoot*, 797 F.2d at 507 (7th Cir. 1986)); *Rand-Whitney Containerboard, Ltd. P'ship v. Town of Montville*, 2007 U.S. Dist. LEXIS 107633, at *12 (D. Conn. Jan. 23, 2007) (cost of bond was just one percent per annum, which did not impose undue burden on defendant); *Suntrust Mortg., Inc. v. United Guar. Residential Ins. Co.*, 2011 U.S. Dist. LEXIS 118960, at *16 (E.D. Va. Oct. 14, 2011) (cost of bond was one percent of judgment per annum; risk to plaintiff of losing ability to collect judgment "far outweigh[ed]" burden on defendant of procuring the bond).

In this case, that percent would amount to a cost to iControl of about $57,000 annually. Zlotnitsky's affidavit provides no specific detailed facts from which the Court can conclude iControl lacks the present ability to pay this sum.

**C.    iControl Has Failed To Propose A Plan That Will Provide Adequate Security For Fintech**

To the extent iControl cannot afford to post a full bond, it bears the "burden . . . to propose a plan that will provide adequate (or as adequate as possible) security" for Fintech." *Grand Entm't Grp.*, 1992 U.S. Dist. LEXIS 7164, at *4-5; *see also United States v. O'Callaghan*, 805 F. Supp. 2d 1321, 1324-25 (M.D. Fla. 2011) ("[e]ven if a judgment debtor presents sufficient reason to depart from the requirement of a full bond, *Poplar Grove* strongly suggests that the judgment debtor must provide substitute security that furnishes equal protection to the judgment creditor") (internal

citations and quotation marks omitted); *Slip N' Slide Records*, 2007 WL 1098751, at *2.

iControl does not meet this burden, instead, it appears that iControl is improperly attempting to shift the responsibility for formulating the plan to the Court:

> Although iControl is not able to post a bond at this time, it is amenable to other conditions the Court might impose to provide security for Fintech. For example, iControl would agree, as a condition of the stay, not to consummate any material transaction outside the ordinary course of business or make any dividend or similar equity distribution without the Court's approval while the stay is in place.

[Doc. 260 at 4]

iControl applies no alternative security arraignments.  Nor does iControl provide any reason to believe that its proposed restrictions would be adequate to protect Fintech. In support of its purported sufficiency, iControl cites two cases: *PCS Nitrogen, Inc. v. Ross Dev. Corp.*, 2015 WL 12803625 (D.S.C. Mar. 30, 2015) and *United States v. Salus Rehab., Inc.*, 2017 WL 2730229, at *2 (M.D. Fla. Mar. 15, 2017).

*PCS Nitrogen* does not describe the defendant's financial situation. Moreover, it appears that the court believed the defendant would pay the judgment when it came due and waived the bond requirement only on the belief that the posttrial motions would be resolved quickly without a prejudicial delay to the plaintiff. See, 2015 WL 12803625 at *1 ("Defendants have *not* shown the impossibility or impracticality of posting a bond . . . ." (emphasis added)).

In *Salus Rehab*, the defendant's motion to stay execution without bond was unopposed due to the unique facts of the case. Execution of the judgment would have caused a "'cascading default' that might force the closing of 183 skilled nursing

facilities and might displace more than 17,000 vulnerable patients." 2017 WL 2730229, at *2.  Nothing analogous is argued or presented here.

Moreover, the restrictions proposed here by iControl were not enough to secure the plaintiff in *Salus Rehab*. There, the Court also required the defendant to "permit[] inspection of the defendant's financial records" as a condition of waiving the bond requirement. *Id.* at *1. iControl argues "that condition would be inequitable here, as iControl and Fintech are . . . direct competitors, and granting Fintech access to iControl's financial records would give Fintech an unfair competitive advantage." [Doc. 260 at 4 n.1].

However, the fact that parties are competitors does not excuse the defendant from providing financial records to justify a waiver of the bond requirement. *See C. Albert Sauter Co., Inc. v. Richard S. Sauter Co., Inc.*, 368 F. Supp. 501, 504 (E.D. Pa. 1973) (antitrust defendant provided financial statements to plaintiff even though they were "engaged in the same business"). There is nothing unfair about requiring iControl to support its conclusory financial assertions. As the former Fifth Circuit has emphasized, a stay of execution upon payment of a supersedeas bond is "a *privilege*," not a right, "extended the judgment debtor as a price of interdicting the validity of an order to pay money." *Poplar Grove*, 600 F.2d at 1191 (emphasis added).

iControl argues that excusing it from posting a bond would not prejudice Fintech because the delay in execution will last only as long as it takes the Court to rule on posttrial motions, which exposes Fintech to "minimal uncertainty." [Doc. 260 at 4]. It might be true, as a general proposition, that such relatively brief posttrial delays are

not unduly prejudicial, but the coronavirus pandemic makes this a unique case.  The fact that iControl claims that its revenues are dropping in states affected by COVID-19, suggests that Fintech's judgment is becoming uncollectible at a rapid pace. On these facts, Fintech believes that a delay of even a few weeks could substantially hinder its recovery.

III.

<u>**CONCLUSION**</u>

For the foregoing reasons, the Court should deny iControl's Motion For Stay Of Execution Pending Disposition of Post-Trial Motions.

Respectfully submitted,

/s/Richard C. McCrea, Jr.
Richard C. McCrea, Jr.
Florida Bar No. 351539
Email:  mccrear@gtlaw.com
Catherine H. Molloy
Florida Bar No. 33500
Email: molloyk@gtlaw.com
Tristan J. Reiniers
Florida Bar No. 0119358
Email: reinierst@gtlaw.com
**GREENBERG TRAURIG, P.A.**
101 E. Kennedy Boulevard
Suite 1900
Tampa, Florida  33602
Telephone: (813) 318-5700
Facsimile:  (813) 318-5900
*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on April 13, 2020, I electronically filed the foregoing with the Court by using the CM/ECF system, which will send a notice of electronic filing to:

Robert L. Rocke, Esq.
rrocke@rmslegal.com
Jonathan B. Sbar, Esq.
jsbar@rmslegal.com
Andrea K. Holder, Esq.
aholder@rmslegal.com
ROCKE, McLEAN & SBAR, P.A.
2309 S. MacDill Avenue
Tampa, Florida  33629

/s/ Richard C. McCrea, Jr.
Attorney