UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

FINANCIAL INFORMATION
TECHNOLOGIES LLC,

    Plaintiff,

v.                                                            CASE NO. 8:17-cv-190-T-23SPF

ICONTROL SYSTEMS, USA, LLC,

    Defendant.
_____/

**ORDER**

After trial of Fintech's claim under the Florida Uniform Trade Secrets Act, the jury returned a verdict (Doc. 245) finding that iControl willfully and maliciously misappropriated Fintech's trade secrets. iControl moves (Doc. 269) for a new trial on liability and for judgment as a matter of law on damages. Fintech opposes (Doc. 277) and moves (Doc. 249) for a permanent injunction, which iControl opposes (Doc. 252).

**I.**  **iControl's motion for a new trial and for judgment as a matter of law**

    A.  iControl's motion for a new trial on liability

The jury found that "Fintech prove[d] by a preponderance of the evidence that iControl misappropriated Fintech's trade secrets[.]" (Doc. 245 at 1) Moving for a new trial on liability, iControl argues that Fintech's software features "were readily

apparent to customers" and that Fintech failed to identify the trade secrets "with reasonable particularity."  But Fintech (1) presented evidence showing that iControl hired Fintech's former software engineer and rapidly developed a competing suite of software features that perform substantially the same function as Fintech's software features, (2) presented both direct and circumstantial evidence supporting the inference that Fintech's former software engineer divulged the methods by which Fintech developed the software features, and (3) presented expert testimony identifying with reasonable particularity the features misappropriated by Fintech's former software engineers.  A reasonable juror could find that iControl misappropriated Fintech's trade secrets.

Also, the jury's verdict finds "by a preponderance of the evidence that iControl willfully and maliciously misappropriated Fintech's trade secrets" and awards $3.0 million in exemplary damages.  (Doc. 245 at 2)  iControl argues that the evidence at trial cannot "meet the test of egregiousness necessary to support an award of exemplary damages."  However, the jury could have reasonably inferred from the trial evidence that iControl schemed to hire Fintech's former software engineer to misappropriate Fintech's software features, attempted to conceal the former software engineer's development on behalf of iControl, and intended to use the misappropriated software to cause Fintech's customers to switch from Fintech to iControl.  From the trial evidence, a reasonable juror could infer both willfulness and malice.

B.      iControl's motion for judgment as a matter of law on damages

The jury found that Fintech proved by a preponderance of the evidence that Fintech suffered $2.7 million in actual damages resulting from Fintech's clients switching to iControl.  Moving for judgment as a matter of law on damages, iControl argues that Fintech relied on evidence of lost revenue only but failed to demonstrate evidence of lost profits, that is, lost revenue minus costs.  But at trial Fintech presented evidence supporting a finding both that Fintech's fixed-cost savings were trivial due to the relatively few clients lost to iControl (eighty three out of thirty thousand) and that Fintech's marginal costs per lost client were between zero and three percent of revenues.  And the jury's verdict permits the inference that the jury accounted for fixed and marginal costs because the jury awarded actual damages less than the amount of lost revenue presented at trial.  The evidence permits a reasonably jury's finding damages in the amount awarded.

## II.     Fintech's motion for a permanent injunction

Rather than identifying the trade secrets for which Fintech demands an injunction, Fintech cites the jury verdict and moves (Doc. 249) for a permanent injunction prohibiting "iControl from doing business in the regulated commerce industry," that is, prohibiting iControl's competing with Fintech.  However, as iControl persuasively demonstrates in opposition to request for a permanent injunction, the Florida Uniform Trade Secrets Act authorizes the injunction of specific, identifiable trade secrets but authorizes no blanket restraint of competition. *East v. Aqua Gaming, Inc.*, 805 So. 2d 932, 935 (Fla. 2d DCA 2001); *Norton v. Am.*

*LED Tech., Inc.*, 245 So. 3d 968, 969 (Fla. 1st DCA 2018) (reversing "the portion of the order enjoining [defendant] from competing in the industry, as UTSA does not authorize such relief.")  The motion for a permanent injunction (Doc. 249) warrants denial without prejudice to Fintech's renewing the motion and identifying with reasonable particularity the specific trade secrets for which Fintech requests an injunction.

## CONCLUSION

The motion (Doc. 269) for a new trial and for judgment as a matter of law is **DENIED**.  The motion (Doc. 249) for a permanent injunction is **DENIED WITHOUT PREJUDICE**.  No later than **AUGUST 17, 2020**, Fintech may move for a permanent injunction, which motion must identify with reasonable specificity the trade secrets for which Fintech demands an injunction.  The motion (Doc. 260) for a stay of execution is **DENIED AS MOOT**.  The motions (Docs. 255, 256) for an attorney's fee and the resolution of the objections (Docs. 264, 265) to each party's proposed costs are **REFERRED** to Magistrate Judge Sean P. Flynn for a report and recommendation.

ORDERED in Tampa, Florida, on August 10, 2020.

STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE