UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

FINANCIAL INFORMATION
TECHNOLOGIES, LLC.,

                      Plaintiff,

v.                                               Case No.: 8:17-cv-00190-SDM-SPF

ICONTROL SYSTEMS, USA, LLC,

                      Defendant.
_____/

**iCONTROL'S OPPOSITION TO FINTECH'S MOTION FOR EXTENSION
TO FILE RENEWED MOTION FOR PERMANENT INJUNCTION**

Defendant, iControl Systems, USA, LLC ("iControl" or "Defendant"), hereby files its response in Opposition to Fintech's Motion for Extension to File Renewed Motion for Permanent Injunction ("Extension Motion"), and in support thereof states as follows:

At 9:00pm on Thursday, August 20, 2020, Plaintiff Fintech filed a motion to extend the deadline the Court set for Fintech to file, if it chose to do so, a renewed motion for a permanent injunction. That deadline had expired three days earlier. Defendant iControl respectfully asks that the Court deny the Extension Motion.

Nearly six months ago, on March 5, 2020, Fintech filed a motion asking this Court to enter a sweeping permanent injunction that would have prohibited iControl "from doing business in the regulated commerce industry." Doc. 249 at 5. In other words, Fintech asked the Court to completely bar iControl from competing with it in the marketplace. Fintech's motion was overreaching and improper. As iControl explained, Florida law unambiguously prohibits such a broad, anti-competition injunction. Although Fintech's motion had little chance of succeeding in

1

this Court, Fintech used the motion to obtain significant commercial advantage. For more than five months, Fintech pressured iControl's customers to switch their accounts to Fintech by warning them that this Court might grant Fintech's overbroad motion and order iControl to immediately shut down its regulated commerce business. These tactics enabled Fintech to take a substantial amount of business away from iControl while Fintech's injunction motion was pending.

On August 10, 2020, this Court denied Fintech's motion. The Court agreed with iControl that Florida law "authorizes no [such] blanket restraint of competition." Doc. 279 at 3. The Court had no obligation to give Fintech *any* opportunity to seek a narrower injunction. After all, Fintech had chosen—for its own strategic reasons—to seek *only* a blanket restraint on competition. Fintech had put all its eggs in that basket and had not asked for a narrower injunction, not even in the alternative. The Court, however, generously gave Fintech **one week**—until August 17, 2020—to file a second motion for a permanent injunction that would "identify with reasonable specificity the trade secrets for which Fintech demands an injunction." *Id.* at 4.

Fintech was fortunate that the Court permitted it to file a second injunction motion at all, and the time the Court gave Fintech to file such a motion was appropriately modest (but ample). At trial in this case, Fintech had an obligation to identify its protectible trade secrets with "reasonable particularity." *Revello Med. Mgmt., Inc. v. Med-Data Infotech USA, Inc.*, 50 So. 3d 678, 679 (Fla. 2d DCA 2010). iControl maintains that Fintech failed to do so. Even now, iControl is not sure what the trade secrets are that it is being held liable for having misappropriated. Nonetheless, having prevailed at trial, Fintech should have had no difficulty promptly complying with this Court's directive to identify the specific trade secrets at issue. Indeed, given the importance Fintech claims to place on the injunction in the Extension Motion, one might have expected Fintech to have filed even sooner.

Yet the deadline set by the Court came and went with no filing by Fintech. When Fintech filed nothing on the deadline, iControl assumed that Fintech had—again, for its own strategic reasons—decided not to pursue a narrower injunction, which would have required Fintech to attempt to identify the trade secrets with particularity. iControl then entered into good-faith settlement negotiations with Fintech premised on the understanding that there would be no injunction in this case. As Fintech states in its motion, in the course of those settlement discussions, iControl pointed out that Fintech had not renewed its injunction motion. Only *after* being alerted by iControl did Fintech file the Extension Motion.

Fintech asks the Court to extend the already-expired deadline based on "excusable neglect." In determining whether a missed deadline resulted from excusable neglect, courts consider four factors: "(1) the danger of prejudice to the nonmovant; (2) the length of the delay and the impact on judicial proceedings; (3) the reason for the delay, including whether it was within the reasonable control of the movant; and (4) whether the movant acted in good faith." *Zurich Am. Ins. Co. v. Euro. Tile & Floors, Inc.*, 2017 WL 638640, at *2 (M.D. Fla. Feb. 16, 2017). Here, those factors weigh against relieving Fintech of the consequences of its missed deadline.

***First***, Fintech's delay is highly prejudicial to iControl. As noted above, iControl reasonably assumed that Fintech's failure to file on the deadline set by the Court reflected a deliberate strategic decision not to seek a narrower injunction. iControl relied on Fintech's apparent decision, both in the positions it took in subsequent settlement discussions with Fintech and—more importantly—in extensive discussions and negotiations with iControl's investors. Those delicate negotiations have now been thrown into turmoil by Fintech's attempt to revive the injunction issue that iControl reasonably believed was off the table. iControl is a much smaller company than Fintech and has struggled to survive Fintech's attacks—both those in court that led to a damages judgment that

iControl is attempting to bond and, as described above, those outside of court designed to scare iControl's customers into switching to Fintech even absent an injunction. iControl was entitled to rely on this Court's clear deadline and on Fintech's failure to meet that deadline, and it should not be penalized for having done so.

**Second**, judicial efficiency would not be served by allowing Fintech to file a belated second injunction motion. As explained above, Fintech already gained nearly six months of commercial advantage from its original, overly broad injunction motion, which the Court held was unsupported by Florida law. Fintech could have sought a narrower injunction in its original motion, or it could have done so by the deadline the Court set for a renewed motion. Allowing Fintech a third bite at the apple would not promote efficiency or respect for the judicial process.

**Third**, Fintech's reasons for the delay do not warrant relief. Although the August 17 deadline was set out in bold type in the conclusion of this Court's four-page order, Fintech states that it missed the deadline because counsel "inadvertently failed to calendar" it. Doc. 280 at 2. But the deadline was for only *seven days later*; counsel hardly needed to "calendar" it to keep it in mind. And "inadvertence … do[es] not usually constitute 'excusable' neglect." *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 392 (1993). Indeed, courts in this District and elsewhere routinely hold that a mere "failure to correctly calendar the deadline to file a motion … , absent more, is not excusable neglect." *Wright v. Dyck-O'Neal, Inc.*, 2016 WL 3912050, at *5 (M.D. Fla. June 27, 2016); *see also, e.g.*, *Zurich*, 2017 WL 638640, at *3 ("overlooking deadlines" is "within the movant's control and do[es] not constitute excusable neglect"); *Deleon v. Denny's Inc.*, 2020 WL 4873868, at *3 (C.D. Cal. July 22, 2020) ("failing to calendar or miscalendaring a deadline is not excusable neglect"); *Puerto v. Moreno*, 2020 WL 2308480, at *2 (S.D. Fla. May 8, 2020) ("the inadvertent failure to calendar the motion deadline … was not excusable neglect");

4

*Sream, Inc. v. Ecstasy Fashion II, Inc.*, 2018 WL 10374693, at *2 (S.D. Fla. Sept. 19, 2018) (finding no excusable neglect where plaintiffs "provided no other reason" for their untimely filing "apart from their system's failure to calendar the requisite deadlines"). As the Fifth Circuit has explained, "[c]alendaring errors and mistakes about deadlines qualify as a careless mistake of counsel" that do not justify relief from a missed deadline. *Rayford v. Karl Storz Endoscopy Am., Inc.*, 740 F. App'x 435, 437 (5th Cir. 2018).

**Fourth**, and relatedly, while iControl does not dispute that the error was inadvertent, "good faith is not found where the party is merely ignorant of a court's rules and deadlines." *Zurich*, 2017 WL 638640, at *3. And even where a failure by counsel did not "result[] from bad faith conduct, that fact alone does not warrant a finding of excusable neglect." *Melgar v. M.I. Quality Lawn Maintenance, Inc.*, 2010 WL 11553187, at *2 (S.D. Fla. Dec. 8, 2010) (where plaintiff claimed to have missed a deadline because of a "calendaring error," the court held that plaintiff's "negligence was not excusable"). For example, this Court held that "[e]xtensive decisional precedent" supported a bankruptcy court's determination that the United States' failure to timely appeal due to "the mistake of counsel in failing to calendar properly the deadline for filing a notice of appeal under the governing federal rules of procedure" was not excusable neglect even though "[n]either party dispute[d] the United States' good faith." *In re Lykes Bros. Steamship Co.*, 2009 WL 3157630, at *2 (M.D. Fla. Sept. 28, 2009) (Merryday, J.).

In short, after having exploited its original, overbroad injunction motion in the marketplace for almost six months, Fintech now seeks to further prolong this litigation and deprive iControl of the small measure of peace provided by the lapsing of the deadline the Court imposed for Fintech to file a narrower injunction motion. But "[a] deadline is a deadline. It is not a suggestion …." *EEOC v. Joe Ryan Enters., Inc.*, 2013 WL 499892, at *3 (M.D. Ala. Feb. 8, 2013) (striking

5

summary judgment motion that defendant filed three days late). iControl was entitled to rely on the clear deadline this Court set, and it did so. iControl asks the Court to enforce that deadline.

## CONCLUSION

iControl respectfully requests that the Court deny Fintech's motion for an extension.

|  |  |
|---|---|
|  | /s/ Jeffrey S. Bucholtz |
| Jonathan B. Sbar, Esq. (FBN 131016) | Jeffrey S. Bucholtz (*Pro Hac Vice*) |
| Email: jsbar@rmslegal.com | Paul Alessio Mezzina (*Pro Hac Vice*) |
| Robert L. Rocke, Esq. (FBN 710342) | KING & SPALDING LLP |
| Email: rrocke@rmslegal.com | 1700 Pennsylvania Ave. NW, Suite 200 |
| Andrea K. Holder, Esq. (FBN 104756) | Washington, D.C. 20006 |
| Email: aholder@rmslegal.com | Phone: 202-626-2907 |
| ROCKE, McLEAN & SBAR, P.A. |  |
| 2309 S. MacDill Avenue |  |
| Tampa, FL 33629 |  |
| Phone: 813-769-5600 |  |

*Attorneys for Defendant*

## CERTIFICATE OF SERVICE

I certify that on August 21, 2020, I electronically filed the foregoing via the Court's CM/ECF filing system, which will send a notice of filing to all counsel of record.

/s/ Jeffrey S. Bucholtz
Jeffrey S. Bucholtz (*Pro Hac Vice*)